## Benjamin H. Ehrlich, Appellant, v. Garfield D. Chapple, Appellee.

## Gen. No. 28,112.

1. CHATTEL MORTGAGES—*provision requiring mortgagor to keep truck in running condition as basis of garageman's lien.* A chattel mortgagor of a motor truck has authority under the mortgage to contract with a mechanic for the making of repairs on the truck made necessary by a temporary breakdown to keep it in first-class running order where he is entitled to retain possession of the truck under the terms of the mortgage and is also required thereby to keep it in first-class running order and such repairman has a common-law lien on the truck in his possession for the payment to him of his reasonable charges for repairs which is superior to the lien of the mortgage, although the mortgage was recorded prior to the making of the repairs.

2. CHATTEL MORTGAGES—*common-law lien of garageman for repairs not affected by Act of July 1, 1921, providing additional lien.* The Act of July 1, 1921 (Cahill's Ill. St. 1921, ch. 82, ¶¶ 45-52), creating a lien upon chattels in favor of a person expending labor, skill or materials thereon and providing the method of enforcement thereof, provides for a "paper" lien dependent upon recordation of notice of lien and not upon possession, in addition to the common-law lien which rests on possession of the chattel, and the provision of section 4, that the lien thereby created shall be subject to the lien of a prior recorded chattel mortgage, does not make the lien of such mortgage superior to a repairman's lien for authorized repairs on a motor truck which he retains in his possession, since such act expressly provides that it is for the better protection of such persons and that the lien thereby created is in addition to and not exclusive of the common-law lien.

3. CONVERSION—*retention of possession of truck by garageman under lien for repairs.* An automobile repairman who has made repairs on a motor truck at the request of the chattel mortgagor thereof who was authorized by the mortgage to retain possession and was required to keep it in first-class running condition, is not guilty of conversion of such truck as against the chattel mortgagee in retaining possession under his common-law lien for the repairs, he being entitled as a matter of law to possession of the truck as security for the payment of his bill, regardless of the fact that the mortgage was recorded prior to the making of the repairs.

Appeal by plaintiff from the County Court of Cook county; the

Hon. FRANK E. REED, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1922. Affirmed. Opinion filed March 13, 1923.

GEORGE J. GILBERT, for appellant.

RANKIN, LUSTFIELD & LANDISE, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In an action of trover for damages for the alleged conversion of a certain automobile truck, tried *de novo* before a jury in the county court of Cook county on appeal from a judgment rendered by a justice of the peace in favor of plaintiff, the county court at the conclusion of all the evidence instructed the jury to return a verdict finding the defendant not guilty and, such verdict being returned, entered judgment against plaintiff for costs, and this appeal followed.

One James Valino, engaged in the expressing business, was the owner of the truck. While using it in his business in October, 1921, it broke down in the Village of Melrose Park in said county and was towed to defendant's nearby garage, where defendant, at Valino's request, made repairs necessary to enable the truck to run, and enhancing its value, to the amount of about $25. Valino did not pay defendant for the repairs and defendant refused to deliver back the truck until his just bill therefor was paid, he claiming a lien on the truck to that extent.

During the month of September, 1921, plaintiff became the owner by written assignment of a valid chattel mortgage on the truck, which, on August 27, 1921, Valino had executed to secure an indebtedness of $175, evidenced by certain of his promissory notes. On being informed by Valino that the truck was being held by defendant for the repair bill, plaintiff telephoned defendant that he held a chattel mortgage on the truck

which was a prior lien to that of defendant, and demanded that the truck be turned over to him. Defendant refused to do this until his bill for repairs was paid, and thereafter plaintiff, on October 12, 1921, commenced the present action before the justice of the peace in replevin, and, the truck not being taken under the writ, he thereafter proceeded in trover. He did not specifically authorize the making of the repairs in question, and was not informed that Valino had contracted for them until after they had been completed.

The chattel mortgage contained the provision that the mortgagor might retain possession of the truck at his expense until default was made in the payment of any of the notes, but that if such default was made, or if the mortgagee should feel insecure, etc., all of the notes should, at his option and without notice, become at once due, and he should have the right to take possession of the truck, and contained the further provision that the mortgagor should keep the property "in first-class condition at all times at the expense of the mortgagor."

In their printed arguments here filed counsel for both parties agree that the only question presented is one of law, which is, in substance, whether defendant's lien for the necessary repairs on the truck, which were ordered by Valino, is superior to the lien of the prior chattel mortgage on the truck.

In 1 Jones on Liens, sec. 731, it is said: "By the common law, a workman, who by his skill and labor has enhanced the value of a chattel, has a lien on it for his reasonable charges, provided the employment be with the consent, either express or implied, of the owner. * * * Except as declared by modern statutes, this lien rests upon immemorial recognition, or, in other words, upon the common law. It exists in favor of every bailee for hire who takes property in the way of his trade and occupation, and by his labor

and skill imparts additional value to it." And it is the general rule that such lien can only be asserted, as against a third party, where the chattel is retained in the possession of the lien claimant or his agent. (1 Jones on Liens, secs. 20-24; *Rehm v. Viall*, 185 Ill. App. 425.) Whether such lien takes precedence over that of a previously recorded chattel mortgage depends upon the circumstances attending its creation. (1 Jones on Liens, sec. 744.) While the mortgagor cannot by contract create such a lien so as to give it priority over that of a previously recorded chattel mortgage, the mortgagee's authority for its creation may be implied, and such implication may arise where the chattel is to be retained and used by the mortgagor, and is of such a character as may require the making of ordinary repairs thereto as a necessary incident to its reasonable and customary use by the mortgagor. (1 Jones on Liens, sec. 744; *Rehm v. Viall, supra; Hammond v. Danielson*, 126 Mass. 294; *Watts v. Sweeney*, 127 Ind. 116; *Drummond Carriage Co. v. Mills*, 54 Neb. 417; *Ruppert v. Zang*, 73 N. J. L. 216.) In the chattel mortgage given by Valino it was not only provided that he, as mortgagor, might retain possession of the truck, but also that he should keep it "in first-class condition at all times" at his expense. We think that under such provision it must be held that Valino had been given sufficient authority by the mortgagee to contract with defendant for the repairs in question, made necessary by the temporary breakdown of the truck and in order that it might be kept in first-class running condition. And, under the authorities cited, we also think that defendant had a common-law lien on the truck as security for the payment to him of his reasonable charges for said repairs, which lien was superior to that of said prior chattel mortgage.

In 1921, the legislature of this State passed an act "for the better protection of any person, firm or cor-

Ehrlich v. Chapple, 228 Ill. App. 293.

poration expending labor, skill or materials upon, or furnishing storage for, any chattel, creating a lien upon such chattel, and providing for the enforcement of such lien.'' (Cahill's Ill. St. 1921, ch. 82, ¶¶ 45-52.) The Act became in force on July 1, 1921, which was prior to the time of the execution and filing of the chattel mortgage in question and to the time that defendant's lien for said repairs attached. Section 1 of the Act provides that every person, etc., who has expended labor, skill or materials upon any chattel, or has furnished storage for said chattel, at the request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof, shall have a lien upon such chattel for the contract price for such expenditures or for such storage, or, in the absence of such contract price, for the reasonable worth of such expenditure or of such storage, ''for a period of one year from and after the completion of such expenditure of labor, skill or materials or of such storage, notwithstanding the fact that the possession of such chattel has been surrendered to the owner, or lawful possessor thereof.'' Section 2 provides that such lien shall cease at the expiration of sixty days from the date of delivery of such chattel to the owner thereof, or his agent, unless the lien claimant shall within said sixty days file, in the office of the recorder of deeds of the county within which such expenditure was made on, or storage furnished for, such chattel, a lien notice, verified by the oath of the claimant or by someone in his behalf having personal knowledge of the facts. The section mentions the essential facts to be stated in the notice and sets forth the form thereof. Section 3 provides for the filing and indexing of the notice by the recorder and for his fee. Section 4 provides: ''The lien created by this Act shall be subject to the lien of any *bona fide* chattel mortgage upon the same chattel recorded prior to the commencement of any lien herein created, but said lien

herein created shall be in addition to, and shall not exclude, any lien now existing at common law." Section 5 provides for the releasing of the lien by the claimant filing a satisfaction piece and that the owner of the chattel may file a written document showing the nonexistence, satisfaction or termination of the lien. Section 6 is a lengthy one and sets forth the manner in which the "liens provided for in this Act" may be foreclosed by suit in chancery in the circuit court in any county in the State, or by advertisement and sale of the chattel subject to the lien. Section 7 concerns certain costs. And in the final section (8) it is stated that the invalidity of any section or sections shall not affect the validity of the remainder of the act, and that if for any reason section 6 shall be held to be invalid the "liens provided for in this Act" may be foreclosed by bill in equity in the circuit court of any county in the State having jurisdiction of the persons or the subject-matter.

Our attention has not been called to any case wherein our Supreme Court has passed upon the validity of this act or any portion thereof, or wherein the act, or any of its provisions, has been construed by the courts of review of this State.

Plaintiff's counsel contend that because of the provision contained in section 4, relating to the lien of a prior chattel mortgage, the judgment rendered against plaintiff was erroneous. We do not think so. While it is provided in said section that "the lien created by this Act shall be subject to the lien of any *bona fide* chattel mortgage upon the same chattel recorded prior to the commencement of any lien herein created," it is also provided therein that "said lien herein created shall be *in addition to, and shall not exclude, any lien now existing at common law.*" As we construe this provision, together with the entire act, it was not intended that the existing common-law lien of a mechanic or artificer, who had retained possession of the

chattel as security for his reasonable charges for labor performed thereon, should in any way be affected, even as against the lien of a previously recorded chattel mortgage upon the same chattel, where by the terms of the mortgage the chattel is to be retained and used by the mortgagor. As far as the act in question concerns such a mechanic or artificer, the title of the act discloses that it was the intention that he be given something more than his existing common-law lien. It is therein stated that the act is for his "better protection." It is provided in section 1 that, notwithstanding the fact that he has surrendered possession of the chattel to the owner or lawful possessor, he shall have a lien on the chattel for one year after the completion of his work thereon; and it is provided in section 2 that this lien shall cease at the expiration of sixty days from the date of delivery of the chattel to its owner or his agent, *unless* the claimant shall within said sixty days file for record with the recorder a certain lien notice. In other words, provision is made for a "paper" lien, so to speak, for a definite period where the claimant has surrendered possession of the chattel. His common-law lien depended upon his retaining possession of it. The lien given by this act would be subject to the lien of a previously recorded mortgage on the chattel, and section 4 so declares, but section 4 also declares that this additional lien shall not exclude an existing common-law lien.

Our conclusion is that, under the facts disclosed and the provisions of the chattel mortgage in question, defendant has a lien on the truck given him by the common law, which is superior to that of said mortgage, that said Act of 1921 does not take this lien away or render the lien of the chattel mortgage superior thereto, and that the trial court was warranted in directing the jury to find that defendant was not guilty of a conversion of the truck and in entering the judgment in

his favor. The judgment of the county court is, therefore, affirmed.

*Affirmed.*

BARNES, P. J., and MORRILL, J., concur.